## A. P. BETHEA *v.* GOVEY HOOD.

Arbitrators, before examining the difference to them submitted, shall take an oath before a Judge or Justice of the Peace, to render their award with integrity and impartiality in the cause. C. C. 3078.

Parol evidence is incompetent to eke out an award, deficient in the essential formality of an oath or the arbitrators.

APPEAL from the District Court of the Parish of Carroll, *Perkins, J.* *Drew, Bonner & Short,* for plaintiff, cited 2 M., 305. *Selby,* for defendant and appellant:

BETHEA
*v.*
HOOD.

The plaintiff sues upon what he calls an award, written by his counsel, (testimony so written would be rejected, 10 M. R., 441 ; 7 N. S., 321,) which would give *Hood* his own property, stable, notes, accounts, books and assets, connected with the stable, and make him pay all the debts connected with the stable, in the name of *A. P. Bethea*, or otherwise ; and pay the plaintiff one hundred dollars a month, from Dec. 1849, till October 13th, 1852, and 8 per cent. interest upon the total amount, $3340, since Oct. 13th, 1852.

Under the pleadings, the award only was admissible in evidence, and the District Court erred in admitting the parol proof. 9 L. R., 174. 3 L. R., 348 and 350. 3 N. S., 180. The submission only authorized the arbitrators to say what *Bethea's* services should be a month, since or from the year 1850. The award is null, because : 1st : The arbitrators were not sworn. L. C. 3078, and 3086. 3 M. R., 317. 9 M. R., 204. 15 L. R., 424. La. or Greiner's Digest, p. 182 *et seq*. 2d : The defendant was not notified of the time or place of the meeting of the arbitrators, and had no opportunity of introducing his proofs, &c. L. C., 3077 and 3080. Had the arbitrators heard any evidence, called the parties before them, or even attempted a statement upon which to base an award it might have occurred to them to consider whether *Bethea*, with his family, lived all the time without receiving anything from *Hood*. 16 L. R., 362. 3d : The arbitrators exceeded the powers submitted to them. Greiner's Dig., p. 182 *et seq*.

The testimony of *Wagnon* is much relied on by plaintiff, that when the award was read to them : "*Hood* said it was all right, and *Bethea* said it was all right, and each treated in Shavetail." Proof of such declarations are the weakest of all kinds of testimony, under any circumstances. 13 L. R., 418. 11 L. R., 137. 9 L. R., 410–562. 6 Ann. R., 763. This is also for more than $500, for $3340, and the testimony of one witness is insufficient to establish it. L. C., 2257, and this witness had been one of the arbitrators ; and at the time it does not appear that *Hood* knew of the irregularities, that it was necessary that they be sworn, and that they had not been sworn, nor of the effect of them. 12 L. R., 465–12 ; R. R., 152.

BUCHANAN, J. This is a suit to render executory an award of arbitrators.

The defendant opposes the said award on the following grounds of informality :

1st. That the arbitrators were not sworn.

2d. That the defendant was not notified of the time or place of the examination of the matters submitted.

3d. That the arbitrators decided without having any evidence or testimony.

4th. That the arbitrators have exceeded their powers under the submission.

The first, third and fourth of these grounds of objection are sustained by the evidence ; but for the purpose of this decision, it is only necessary to notice more particularly the first.

Neither the submission nor the award make any mention of the arbitrators having been sworn ; and two of these arbitrators, being called by plaintiff as witnesses in the case, testify that they were not sworn.

The want of this formality is fatal to the award. The Civil Code, article 3078, requires that arbitrators, before examing the difference to them submitted, shall take an oath before a Judge or Justice of the Peace, to render their award with integrity and impartiality in the cause. This article is copied literally from the Code of 1808, p. 422, Art. 13. *Harrod* v. *Lewis*, 3 Mart. Rep., 318. The case of *Talcott* v. *McKibben*, 2 Martin, 298, does not conflict in the least with this provision of the law. That was a case left, by consent of parties, and an order of court entered upon such consent, to five merchants named in the order, whose report was to be made the judgment of the Court. And even in that case, although from the language of the decision it might be inferred that the oath of referrees, under the circumstances, was not material, yet we find from

the argument of the counsel as reported, that the report itself stated that the referrees were "first duly sworn."

The counsel of the plaintiff in argument has urged upon the attention of this Court the evidence of one of his witnesses, that defendant had acknowledged the correctness of the award. But we do not understand the merits of the controversy between these parties to be before us. This action is not an appeal from the award of the arbitrators. C. C., 3096. And it seems to be settled in the case of *Sharky* v. *Wood*, 5 Robinson, 326, that parol evidence is incompetent to eke out an award, deficient in the essential formality of an oath of the arbitrators.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed, and that this suit be dismissed at cost of plaintiff in both Courts, without prejudice to the rights of the parties in asserting their original demands against each other according to law.

SLIDELL, C. J. The action is brought upon an award of arbitrators; the sum claimed under the award is $3340, with eight per cent. interest from 13th October, 1852. The defendant resisted the action upon the grounds, that the arbitrators were not sworn, that he was not notified of the time or place of examination, that the arbitrators heard no evidence, that their decision was unjust and exorbitant, that they have allowed him no credits, had no statement of the mode in which they arrived at their conclusions, and had exceeded their powers. There was judgment in favor of the plaintiff for the amount claimed, and the defendant appealed.

In argument here the validity of the award has been questioned on several grounds, a portion of which only I proceed to notice.

The agreement for arbitration is in these words: "We the undersigned do hereby agree to appoint two disinterested persons to say what *A. P. Bethea* shall receive per month for keeping the livery stables known as *A. P. Bethea's,* and also for attending to other business which he had in his care. Should the two first persons not agree, then the said persons may call on the third person, and whatever they may determine, we the undersigned agree to abide by, from the year 1850 to the present day, 13th October, 1852.

(Signed)                    GOVEY HOOD,<br>A. P. BETHEA.

The award bears date on the same day, and is as follows:

"The undersigned arbitrators, to wit: *John Righter*, appointed and selected by *Govey Hood*, in pursuance of the above submission, and *Hamilton D. Wagnon*, appointed by *A. P. Bethea*, after consultation, could not agree. We then selected *Robert N. Campbell*, according to the above submission, and thereupon proceeded to award as follows: *Govey Hood* is to take the stable with all the property belonging thereto, and is to have all the book accounts, notes and assets, connected therewith, and the said *Hood* is to pay, and is hereby made responsible for all costs made by the stable for all purposes connected therewith, either in the name of *A. P. Bethea* or otherwise. And the said *Hood* is further awarded to pay to said *Bethea* the sum of one hundred dollars per month from the first day of January, 1850, up to the thirteenth day of October, 1852. Said award is made as cash at this date. And should the said *Hood* fail to pay cash,

then this is to bear 8 per cent. interest from this date. This done, and this proces verbal made, this 13th day of October, A. D. 1852.

(Signed)  JOHN RIGHTER,
H. D. WAGNON,
R. N. CAMPBELL.

It is obvious, from a comparison of the agreement and award, that the referees exceeded their powers. They were to say what *Bethea* should receive per month for keeping the livery stable and for attending to other business which he had had in his care. The general expressions, " whatever they may determine we the undersigned agree to abide by, from the year 1850 to the present day, 13th October, 1852," cannot, in themselves at least, be considered as enlarging the purpose of the submission, so as to cover all matters in dispute between the parties. But the arbitrators have gone much further, have closed the entire accounts of the establishment, and while they restore its exclusive possession to *Hood*, make him answerable for all liabilities connected with it, either in the name of *Bethea* or otherwise.

The difficulty presented by this stretch of power on the part of the arbitrators is increased by a consideration of testimony, which was received without objection at the trial, respecting their proceedings, by the nature of the transactions between these parties so far as they have been developed by the evidence, which is certainly very meagre, and by a fact apparent on the face of the award.

We gather from the evidence oral and documentary, that *Hood*, being the owner of the livery stable, had employed *Bethea* to carry it on, whether as a mere agent or as a partner does not appear. This state of things seems to have lasted nearly two years, and must have involved extended accounts of receipts and expenditures. The arbitrators disposed of the whole matter in a brief consultation on the day of the submission. They heard no testimony, are not shown to have examined any accounts, nor to have received any explanations, or heard any formal discussions from the parties or their counsel. Disagreeing, they named and sent for an umpire, *Campbell*, who says he knew nothing about the matter until five minutes before he acted; that the only question seemed to be, how much wages plaintiff should receive ; that they took no evidence in his presence ; that at the time of the arbitration, *Hood* sat at the door of the stable, and *Bethea* was walking in the stable, but he could not say whether *Hood* knew what they wanted with him, *Campbell*. Another of the arbitrators says neither *Hood* nor *Bethea* knew what the arbitrators were doing, nor what was the difference between him and his co-referee. '

There is a precipitancy and looseness in these proceedings, which leaves our minds dissatisfied with the conclusions of the referees ; and the difficulty is much enhanced by a consideration of the very unusual circumstance of a person being employed for so long a time in such a capacity without any payment on account for his services.

It is true there is evidence of oral admissions by the defendant as to the correctness of the award ; but this testimony is weakened by the consideration of the amount involved, and that the referees themselves could not have had a very accurate acquaintance with their duties or the subject matter, since they had to apply to a third person to write the award, not knowing how to do it.

On the whole, I am not able to come to a satisfactory conclusion as to the merits of this controversy, and therefore concur in the reversal.